Filed 9/8/20  P. v. Myers CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089579 |
| Plaintiff and Respondent, | (Super. Ct. No. S18CRF0205) |
| v. | |
| DUSTIN THOMAS MYERS, | |
| Defendant and Appellant. | |

A jury found defendant Dustin Thomas Myers guilty of assault on a peace officer, removing a weapon from a peace officer, and resisting an executive officer.  The trial court sentenced defendant to a two-year split sentence for the removing a weapon conviction, with concurrent sentences for the other two offenses.  On appeal, defendant contends the trial court should have stayed execution of the sentences for the assault on a peace officer and resisting an executive officer offenses under Penal Code section 654,[1]

---

[1]    Undesignated statutory references are to the Penal Code.

1

rather than running them concurrent. We agree with respect to the assault on a peace officer conviction, modify the judgment, and affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

One evening, a man noticed defendant wandering around a grocery store parking lot. As the man was backing his car out of a parking spot, defendant tried to get into the backseat of the car. The doors were locked so defendant was not able to get in. As this was happening, Officer Christopher Webber pulled into the parking lot in his police car. The officer was responding to a report of a drunk individual in public matching defendant's description.

Officer Webber believed he was witnessing an attempted carjacking, so he got out of his car and yelled at defendant to "[c]ome here. Stop right there."[2] The officer was holding his flashlight when he exited the vehicle. Defendant started to run away and Officer Webber intercepted him on a walkway next to the grocery store. He told defendant to put his hands behind his back, and defendant asked, "[F]or what reason?"

Officer Webber grabbed defendant's arm and defendant tried to pull away. Officer Webber then threw defendant down on the ground and came down on top of him. Defendant tried to push the officer off, and Officer Webber repeatedly commanded defendant to "get down on the ground." Officer Webber then struck defendant several times on the arm with the butt of his flashlight. He told defendant two or three times, "Put your hands behind your back or you're going to get hit again."

Defendant continued to struggle and accused Officer Webber of hitting him with a "billy club," then taunted him, saying, "[Y]ou're a big man, huh?" before calling him a "little girl." Defendant then called the officer a "little fucking bitch," and said, "[Y]ou wait—" before he twisted out from under Officer Webber, placing his feet up against the

---

[2] A video of portions of the encounter was captured by the in-car camera in Officer Webber's car and was entered into evidence at trial.

2

officer's cheek. He kicked Officer Webber in the face, and the officer dropped his flashlight. Both parties were still on the ground.

Defendant picked up the flashlight and swung it at Officer Webber's head twice. Officer Webber got up and backed about 10 to 15 feet away from defendant. Defendant also stood up and moved as if he were about to lunge towards Officer Webber. Officer Webber considered drawing his gun, but did not. He yelled into his radio that defendant had his flashlight. Defendant backed away, threw the flashlight on the ground, turned around, and ran off, taking off one of his boots in the process. Defendant fled to a different parking lot that was adjacent to the grocery store parking lot. Officer Webber followed.

In the parking lot, defendant noticed another police officer, Officer Joe Acker, who was holding a Taser. Defendant slowed down. Officer Webber then tackled defendant, causing defendant to fall on the ground. Defendant rolled over onto his back, and Officers Acker and Webber punched defendant several times. Defendant flailed his arms and struggled, but did not attempt to punch either officer. Eventually, two additional officers, including a canine officer, arrived and helped subdue defendant.

The jury found defendant guilty of misdemeanor assault on a peace officer (§ 241, subd. (c)), removing a weapon from a peace officer (§ 148, subd. (b)), and resisting an executive officer (§ 69), all of which involved defendant's actions towards Officer Webber. The jury found defendant not guilty of misdemeanor resisting an executive officer (§ 148, subd. (a)(1)), involving defendant's actions related to Officer Acker. The court imposed a two-year split sentence for the removing a weapon conviction with a concurrent one-year sentence for the assault on a peace officer conviction and a concurrent two-year sentence for the resisting an executive officer conviction.

DISCUSSION

Defendant contends the sentences for the assault on a peace officer conviction and the resisting an executive officer conviction should have been stayed under section 654

3

because the intent underlying his entire course of conduct was merely to resist Officer Webber. The People agree the sentence for the assault on a peace officer conviction should be stayed, but argue the resisting an executive officer offense involved conduct divisible from the other two counts. We agree with the People.

Section 654 "serves to match a defendant's culpability with punishment." (*People v. Vang* (2010) 184 Cal.App.4th 912, 915.) To do so, it " ' "precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" ' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

" 'If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.]' [Citation.]" (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240 (*Hairston*).) Similarly, " 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]' [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

" 'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial. [Citation.] The factual finding that there was more than one objective must be supported by substantial evidence. [Citation.]' [Citation.]" (*Hairston, supra*,

4

174 Cal.App.4th at p. 240.) "We review the trial court's findings 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Here, with respect to the assault on a peace officer offense and the removing a weapon offense, defendant picked up Officer Webber's flashlight to strike him in the head. Nothing indicates that he had any other intent or objective in picking up the flashlight; after his strikes failed to connect and both parties had backed away from each other, terminating the first encounter, defendant threw the flashlight on the ground and fled. The two offenses were not separate and occurred only in conjunction with each other. (See *People v. Bradford* (1976) 17 Cal.3d 8, 22 [multiple punishments barred where defendant shot at police officer with a gun he had wrested away from officer].) We agree with the parties that the sentence for the assault on a peace officer conviction should be stayed.

Substantial evidence does support, however, the trial court's implicit finding that the resisting an executive officer offense was not part of the same, indivisible transaction as the other two offenses. When Officer Webber first encountered defendant, defendant merely tried to pull away from the officer and ask why he was being stopped. Once Officer Webber struck defendant with his flashlight, however, defendant became angry, accusatory, and taunted Officer Webber. He threatened the officer, calling him a "little fucking bitch," and saying, "[Y]ou wait—" just before he took Officer Webber's flashlight and tried to hit him. Defendant's objective when he tried to hit Officer Webber was thus retaliatory; Officer Webber hit defendant with the flashlight, so defendant wanted to hit him back. The intent was to hurt Officer Webber, rather than merely escape his control.

In contrast, after the first encounter ended, defendant fled and had his second encounter with Officer Webber and the three other police officers in a different parking

5

lot.  He did not attempt to punch any of the officers during this second incident.  Rather, he merely struggled with them, flailed his arms wildly, tried to roll away, and ignored their commands.  Such actions are more consistent with an intent and objective to escape, rather than to hurt the officers.  Defendant formed a new intent to flee from custody in each instance—first in the first parking lot when he initially encountered Officer Webber, and again in the second parking lot.  (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [each gunshot in car chase "evinced a separate intent to do violence" under § 654].)  And each instance of physically resisting arrest carried with it a separate risk of harm to defendant and others, as well as additional criminal culpability.  (*Hairston, supra*, 174 Cal.App.4th at p. 240.)  We thus conclude substantial evidence supports the trial court's implied finding that section 654 did not apply to the resisting an executive officer offense.

DISPOSITION

Execution of the one-year sentence imposed for assault on a peace officer (§ 241, subd. (c)) is stayed pursuant to section 654.  The trial court is directed to prepare an amended minute order and "Felony Sentence - 1170(h) PC" Local Form CR-133 and deliver certified copies to the El Dorado County Probation Department.  As modified, the judgment is affirmed.

                                              KRAUSE          , J.

We concur:

      BLEASE        , Acting P. J.

      MURRAY       , J.